MR. KAUFMAN. Good morning, Your Honors. Pleased to court. I'm Joshua Kaufman on behalf of the defendants in this appeal. This is a case where the old adage of bad facts make bad laws has become a reality. Creative pipes are inexcusable, and I would like to ask Mr. Kaufman to comment on that. MR. KAUFMAN. In its attempt to punish Creative Pipes and its principals for their repugnant conduct, the court exceeded the permissible bounds of damages. And while the court's outrage at Creative Pipe is understandable, its decision on damages cannot stand. It is just erroneous. The court erred on a number of levels in its damage ruling. First, the copyright elements. It's uncontroverted that Creative Pipe sold benches, receptacles, and other items which are useful articles. Useful articles are not subject to copyright protection. Anyone can knock off a useful article, be it a Victor Stanley bench or a receptacle. They are simply not protected by copyright. There's nothing illegal or improper about creating knockoffs of useful articles. But the damages resulting from the violation of copyright are reasonably determinable by the loss of sales and profits from the infringement. Victor Stanley did not, in this case, go after its lost profits. You have two measures of damages to copyright. Their losses, which they elected not to proceed. So there's no questions here about what they lost. It's only whether the profits of CPI Creative Pipe are at play in the copyright claim. And useful articles are a world unto themselves. The copyright law, the cases, the legislative history, all are clear that they are in a silo. They are outside the purview of copyright infringement. The municipalities that were seeking, in the bids that we're talking about, asked for Victor Stanley knockoffs. I mean, that's in the RFPs, in the bids. They said, we want Victor Stanley equivalent type of products. So the manufacture of these products is not an infringing activity. Their copying of the drawings was infringing. Their sending them out, distributing them, those were infringing. But the manufacture and sale of the knockoff is not a copyright infringement. And it is not subject to, the profits are not part of the equation that you find in copyright damages. The NIMI case is on point, and it really, it quotes the legislative history, which I really think focuses it from 13B, when it talks about the copyright in the work, portraying the useful article, as such, would not protect against the manufacture of that article. Copyright protection would not extend in the following cases, and it talks about a copyrighted drawing of a chair and the manufacture of the chair. The copyright of a model of an automobile and the manufacture. And again, right on point, a copyrighted technical drawing showing the construction machine used in the manufacture of that machine. To allow the profits and sale of non-infringing goods to be brought into the purview of copyright, basically, as the court in Elias says, building on that, it would eviscerate the copyright law. They're not simply non-infringing goods, they're goods that directly reflect the copyright infringement. But the goods are not infringing, and that's what I was just saying from the NIMI case and the legislative history, there's a difference. You cannot copy the drawings, absolutely. My client infringed when they copied those drawings, no question. When they sent them out, when they made reproductions, that's a copyright infringement, there's no question. How do you measure the damages? There are two measures of damages. There is their loss of profits, which they chose not to show, or the profits from the sale of the infringing goods. Let's say my client had gone and said, oh, I've got these drawings, and sold them to other competitors. There are 40 people out there who are making Victor Stanley-like products, according to the record. So they could have sold those drawings and made a profit, or the other measure of damage is the one we articulated with the value of use, where the money you save by not going out and creating the drawings, they could have created drawings perfectly appropriately. They could have gone out and measured the bench, made a CAD drawing, and that's perfectly okay. They could have had a perfect Victor Stanley CAD drawing, identical to the Victor Stanley product. My client didn't do that. They should have done that, they didn't, and that's their infringement. The money they saved, and we had expert testimony at trial of a CAD engineer who said, if I had gone out and done this, it would have cost $800, $1,500, whatever is the drawing times, whatever, and that would have been the measure of damages. Again, when you have other products, like you have a t-shirt with the artwork on it, it's the sale of the infringing product that you're talking about. So here, we simply do not have a nexus. The law is very clear. There are no cases that say you can take non-infringing goods, and the profits in the sale of non-infringing goods, and put them into the equation. What the court and VSI do, when they talk about 504B, the allocation aspect of it, that's step two, but we don't get there. Once you establish the nexus, and we have now profits from the infringement, then you sit there and you go, well, you divide it, you take off cost of goods, you do whatever it is, other factors. But in our case, you don't get to 504B, because the sale of non-infringing goods is just not part of the equation. There are lots of different measures of damages, but it doesn't do that. The Supreme Court in Bonita Booth said, once an idea is placed before the public, it's subject to appropriation without restraint. A useful article is just not part of copyright, and what the courts in these cases have said, if you do that, you start getting into use, and you're starting to make copyright equal patent, and we don't want to do that. Counsel, what about the unfair competition and Lanham Act? The unfair competition and Lanham Act, in both of those instances, again, we have a lack of evidence in the record to substantiate the case. There could have been, perhaps, a ruling showing the appropriate damages in both of those, but Victor Stanley did not prove its case. I thought it wasn't really disputed as to what use had been made of the copyrighted plans. It's not. The copyrighted plans were used to, they were shipped to China, and then they made non-infringing goods in China on these, in terms of justice. Well, and the Lanham Act question, and the unfair competition, flows from the, however you describe the providing of the copyright and their use. Right. Now, under the Lanham Act, the reverse palming off, the reverse palming off was, it's not the copyright, it's not the reproduction of the joints, that's copyright. The Lanham Act is where they took Victor Stanley's name off and put their own name on. That's the reverse palming off that we have. But there, and the court was correct, it cited synergistic on page 34 of its order, saying this is the test. Now, there are two tests. There's liability, which we're not arguing, and then there's another test for damages. And that's the test that's set forth in synergistic requirement according to the court, and we agree with the court. But in that case, in synergistic, it's a Fourth Circuit case, they specifically say, one of the five criteria is whether sales have been diverted. And the appellate court in synergistic specifically overturned the district court because they did not identify sales which had been diverted. And the record in this case does not show any sales which had been diverted. The court said there's this one case, Plymouth, and Portsmouth, excuse me, outside of Portsmouth, and I'm going to get to that in a second, there's nothing in the record that any of the buyers in any of these municipalities were in any way influenced by the drawings, the names on the drawings. In Portsmouth, you had the agent, Michael Amos, testified at trial that the drawings weren't specified, they weren't required, and that he wasn't aware that they were part of the decision making process. So, we don't have anything in the record showing that any sales were diverted because you had the Victor Stanley name taken off and the Creative Pipe name put on the drawings. They weren't required in many cases. Now, I don't know, they had a huge list of people they could have called, they had all these buyers, they had all these sales, they knew who all these people were, that perhaps they contacted them, they got the wrong answer, or they didn't contact them, I don't know. But they didn't put on any buyers to say that this Lanham Act, this reverse palming off, was the basis why the sales were diverted. Counsel, let me ask you this. The Act says it's likely to cause confusion, and aren't you actually trying to say, impose a higher standard than the Act does that said that you have to not only show it's likely to cause confusion, but show that it actually did in fact cause confusion? For damages, unlike liability, synergistic, which I think is the controlling case, says you have to show that sales were diverted. You have to have sales diverted on the synergistic. There's nothing in the record to show that there were any sales were directed. And the same thing on the unfair competition aspects under Maryland law. The court correctly stated in page 25 and 26 of its order that the standard for compensatory damages, quote, must be derived from or attributed to the unfair competition. There's nothing in the record again to show that. The unfair competition, all these false things they said on their website and such, and the use of the drawings. You have to remember, there are 40 people out there who are selling these things. Credo Pike didn't target Victor Stanley. They were doing this against all their competitors. In most of these cases, or a lot of these sales, Victor Stanley wasn't even a player. They weren't in all of these things. Yet the court went and awarded all their profits, even in cases where Victor Stanley wasn't necessarily a competitor. You have a situation here where, actually, if you take the logic where you don't have to show that something was derived from or attributed to, then any of the other 40 people who make these things could come back and get 100% of Credo Pike's profits, because that's what the court did here. They granted not an appropriate share, not something that was shown. They granted 100% with nothing in the record to show anything from 19… But you don't deny that your client used these drawings to obtain 12 successful bids and profited by it? They were included in the packet. Whether they were required, factored into, there was nobody there ever testifying saying, we considered this, we're a part of it. But you're attempting to impose an almost impossible burden on a plaintiff in this type of case? No, they had all of these people they could have called. They knew all the buyers. They had a list. That's how they calculated the profits. There was also spoliation of evidence here. Absolutely. A huge amount of spoliation. But not in this part of the case. They had the sales. Can I ask you, why is our brief labeled in the Fourth Circuit? This was originally filed in the Fourth Circuit. It had a patent claim. Pardon me? It had a patent claim. Right. And there was an error on our part. Opposing counsel didn't pick up on it. The Fourth Circuit didn't pick up on it. I'm sorry. Excuse me. Why didn't it comply with our local rule, which requires a copy of the district court's opinion in the blue brief? When we transferred the case over, the clerk said we could just use the pleadings as they stood. They didn't ask us. We specifically said, do you want us to redo things? All that. And the clerk specifically said that, no, just use the ones that you were sent to the Fourth Circuit. And we apologized. We made the mistake in filing in the Fourth Circuit. Opposing counsel didn't pick up on it. The Fourth Circuit didn't pick up on it. They scheduled it. It's just Judge Garbus at the end. So I'm, you know. Okay. Let's hear from the other side. Yes, ma'am. And we wish everybody well, Mr. Kaufman. Mr. Walensky. Thank you. May I please report? My name is Robert Walensky of Hogan Lovells. I represent Victor Stanley Incorporated here in Maryland. I want to correct a couple of things that Mr. Kaufman said, because we went through a trial together, and he just is getting a few things wrong. The district court did not award my client all of his client's profits. He only awarded us profits on VSI-like products, meaning that Creative Pipe was out there competing with all sorts of people, and sometimes it specified a VSI-like product, and sometimes it specified a product for some other company. And when Creative Pipe made profits on sales of products that were not VSI-like products, VSI is Victor Stanley, we didn't get those profits. So Mr. Kaufman's claim that all of his client's profits were awarded to my client is simply false, and it would not be unjust enrichment. Second, he said that his client did not specifically target Victor Stanley, and I've been working on this case since 2005. I had a full head of hair when I started on it, and let me tell you, there is overwhelming evidence that his client targeted my client over and over again. What his client did... Well, there was a complete copy of the... Absolutely. I don't think targeting is an issue here, is it? It is for the unfair competition, it is for the reverse passing off, it is for the equitable disgorgement of profits. This is a company that went to our client's website, stole our drawings, sent them offshore, had the name changed to his client's name and his client's model number. Not only sent it off for manufacture of the products, which he likes to focus on, but also submitted it with every bid. And the evidence in the record shows that Creative Pipe, to the extent they didn't spoliate their evidence, the evidence is that every single bid they included our drawings. And their office manager, they only had four employees, their office manager sent out the bids, and her testimony was they included the bids because that's how they proved they had a product that was like our client's product so that they could win the bids. But that's not... I thought that what was really the heart of his argument was how damages were measured. So... That the sale of the drawings would have been a legitimate basis for damages, but not the sale of the products made from the drawings. So let me move to that, Your Honor. That is with respect to the copyright issue. Mr. Kaufman says we don't get to 504B. 504B is the Copyright Act section on damages. Liability was not appealed here. Liability was found and entered judgment on liability for copyright infringement because of the spoliation. The only issue at trial was damages. 504B addresses damages. That's where we start, not where we don't get to. And when we get to 504B, we need to look at 504B in the context of the Fourth Circuit's cases with respect to copyright damages. Mr. Kaufman didn't mention any of those cases. There's a clear line of cases addressing damages for copyright infringement. They start with the Bouchat case, which is about the Baltimore Ravens logo, and then the Bonner case, the Phoenix renovation case that we mentioned, and then we just submitted another case, the tire engineering case, this week. And what those cases say is that you apply Section 504B, and what our burden as the plaintiff is, is to show the gross revenues that are attributable to the copyright infringement. And I think this is where you were going, Your Honor. Even though these were useful articles, the sale of those useful articles was attributable to the copyright infringement, meaning the copying of our drawings and the submitting it with the bids. And what the Fourth Circuit has said in Bouchat and Bonner and Phoenix renovation is that our burden is a low burden. All that we have to show is that the copyright infringement is reasonably related or there's some causal link to CPI's gross revenues. Once we meet that burden, the burden shifts to CPI to show that their sales were attributable to something else. They didn't put on evidence that they were. And the district court had adequate evidence in the record and did correctly find that their sales of the articles, which aren't copyright protected, were reasonably related or attributable to the copyright infringement. Once he found that, based on the evidence that they included it with every bid, their office manager said they did it to win the bids, etc., and that they sent the drawings for the manufacture of the goods, otherwise they wouldn't have had them. Once they did all that, that was all that the district court needed to find in order to award us the profit, the gross revenues on the VSI-like products, subject to them coming back and fulfilling their burden that it was attributable to something else, which they did not do. And that's all there is to it. Phoenix renovation is a great case to illustrate the point. Mr. Kaufman says that you have to limit it to the sale of the infringing article. Phoenix renovation involved a copyright on a contract, contract for plumbing services. Someone stole that contract and used it in going out and performing plumbing services. And the issue on appeal in the Fourth Circuit was whether or not it was acceptable for the actual profits from the plumbing services, obviously not copyright protected plumbing services, could be awarded as damages. And what the Fourth Circuit said is as long as they are attributable to the use of the copyrighted contract, they are an acceptable measure of damages. Similarly, in tire engineering, the 2012 case that we just submitted as supplemental authority, a defendant went out and stole technical drawings, just like here. This time it was for tires for mining. And what they did was they used those drawings to manufacture tires. Again, not copyrighted tires. The drawings were copyrighted. The District Court instructed the jury that they should award the plaintiff damages based on the gross revenues that are attributable to the copyright infringement. There was no sale of those technical drawings. What there was was the sale of the tires. And the jury came back and awarded $26 million in damages for sale of those tires, useful articles. The Fourth Circuit heard the case on appeal, and in doing so, didn't address our specific issue, but did affirm the jury's award and did not take issue with the judge's instruction to the jury. So here, Mr. Kaufman didn't cite a single Fourth Circuit case, didn't discuss the relevant precedent at all. He cited the Naemi case, which is a District Court case in Ohio, and the Benito Boats case, which is a state law case that doesn't mention copyrights or address the Copyright Act at all. The Fourth Circuit precedent clearly supports what the judge did here. He looked at the evidence in the record, and he found that the sale of the VSI-like products was attributable to the copyright infringement, and he awarded that as damages. And unless the evidence wasn't sufficient, unless he was clearly wrong, because this is a fact issue, that decision should be affirmed. Let me briefly discuss the unfair competition and reverse passing off, which are two separate causes of action, one under the Lanham Act and one under Maryland state law. With respect to the Lanham Act, we brought a claim for reverse passing off. They took our drawings, they took our name off of them, they took our model number off of them, and they took off the copyright attribution, of course. They put their name and they put their model number on them, and then they held those drawings out as themselves, a classic case of reverse passing off under the Lanham Act. Mr. Kaufman, again, is focused on liability, and liability here is easily established. The key case is the universal furniture case, again, from the Fourth Circuit, which says that there only has to be a likelihood of confusion. There was clear evidence in the record that showed that there was a likelihood of confusion. In fact, the case law in this states the obvious, which is that when someone takes your product and simply changes the name, how else were people going to be but confused? And that's what happened here. And then we move into damages, and what Mr. Kaufman has done is imposed a higher standard for damages that is nowhere in the Fourth Circuit law. Let me just flip to that part of my outline here, because what I'd like to start with is the synergistics case that he mentioned. It's actually the only Fourth Circuit case he mentioned in his entire presentation. That's a 2006 case which says, a trial court in assessing the issue of damages under 15 U.S.C. 1117A should weigh the equities of the dispute and exercise its discretion on whether an award is appropriate, and if so, the amount thereof. To my knowledge, I am not aware of the Fourth Circuit ruling on whether or not it's appropriate, when it's appropriate to award a disgorgement of the defendant's profits under a reverse passing off or any other Lanham Act case. Four other circuits have addressed Mr. Kaufman's argument, the sixth, the seventh, the eighth, the ninth. They've all rejected his argument, and the best case to address that is the web printing case from the Seventh Circuit. Let me just start there. In the web printing case, the Seventh Circuit explained, a plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation. The violation caused confusion among consumers of the plaintiff's product, and as a result, the plaintiff suffered actual injury, a loss of sales, profits, or present value goodwill. And then it goes on that the plaintiff did not prove the elements for recovery of damages, of course, so that avenue of relief is foreclosed. Then it says, other avenues of relief, however, are not foreclosed. In the past, courts have fashioned wide-ranging relief for a violation of the Lanham Act, allowing remedies such as the recovery of defendant's profits, an award of cost of the action in some exceptional cases, and award of attorney's fees. And then it cites a bunch of cases. These remedies flow not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence, for example, in the case of cost, merely from its proof of defendant's Lanham Act violation. To collapse the two inquiries of violation and remedy into one, which asks only of the plaintiff's injury, as did the district court, is to read out of the Lanham Act the remedies that do not rely on the proof of injury caused by actual confusion. And this, of course, is improper. The Eighth Circuit reached a similar result. Counsel, before you run out of time, I guess you would turn to the attorney's fee issue under Rule 37. And specifically, my question to you is, can the court below award attorney's fees under Rule 37 that would have been incurred anyway? So I guess I'd start by saying two things. The court issued its attorney's fees award both under Rule 37 and its inherent power to maintain its own court. And so it issued it under both streams or ways. And the answer to the question would be yes, it didn't here. What it did was it looked to award fees that were affected by the spoliation here, which was egregious, as Mr. Kaufman would agree. And we specifically, when we asked for fees, took out and eliminated 14 categories. And then the district court went through line by line and specifically went through and eliminated further. And it was well within its discretion in doing so. There is a case, Chambers v. NASCA, which is a Supreme Court case, I believe, that says that it's acceptable to award all of the attorney's fees in a case as a result of spoliation or other misconduct if it would be a means of penalty or deterrence under the circumstances. Which case is that? I believe it's Chambers v. NASCA, but I'm— Is that a federal court case? No, it's a Supreme Court case. Supreme Court case. Yeah. Is that under inherent power or Rule 37? I believe it was under inherent power. It's either that or the national hockey case, both of which are cited in our briefs. My trouble under Rule 37, it says caused by misconduct. And I realize it's a difficult task parsing it out, perhaps, but did the trial judge even attempt to parse that out? The trial judge—Magistrate Judge Grimm and the trial judge both attempted to parse that out. They were very careful. We spent an extreme amount of time focused on this. We spent hours putting together a fee petition. Judge Grimm, who is well-known, I think, nationally for his interest in discovery issues, spent a very long amount of time poring over our submission, and he came back to us with questions. He held a hearing. He made us justify our expenses. We went through it in detail with him. He then came back and specifically rejected certain line items, certain fees, and then Creative Pipe made these same arguments to the district court judge. There was another round of briefing, and the district court judge said he was satisfied that the costs that were awarded, the fees that were awarded, reasonably related to the discovery violations. So unless you find some abuse of discretion with respect to specific things that he or the magistrate judge did, it should be affirmed. But I would say that they were very careful and very thorough in their vetting of the expenses, but that they had wide discretion here, both under Rule 37, but more importantly under their inherent authority, to award a broad array of fees as part of penalty, deterrence, et cetera. In my last 30, 60 seconds, I'll just make two points. With respect to the unfair competition claim under Maryland law, Mr. Kaufman is arguing for the creation of new Maryland law, and I don't think this court should do that. There is nothing in Maryland law that requires the showings that Mr. Kaufman claims. The district court correctly applied the Baltimore betting case, which is the seminal Maryland case with respect to unfair competition, and properly awarded damages. With respect to the patent issue, which is the one that brought us here today, I think the district court did exactly what this court did in the Crocs case, did in the Catalina lighting case, said was the correct thing to do in the Braun case. The requirements that Mr. Kaufman is seeking to impose on the district court simply do not exist in this court's case law. With that, I'll take my leave. Thank you, Mr. Walensky. Mr. Kaufman, I just want to start off, I guess, with the two cases that Mr. Walensky mentioned, the new tire case and the Phoenix case. The tire case is very troubling, because we just got it, you know, two days ago, and it's a six-month-old case. And I was struck by, in the case, it didn't say anything about useful articles. So I went on the Copyright Office website to see what we could see. The copyright registrations for those tires that were referred to, particularly, contained the tread pattern is what was copyrighted. So when they were selling those tires, those had the infringing element on them, just like the T-shirt with the artwork. The treads that were being sold in this case, in this tire case, the tires had the tread. They had the infringing items. That's why the case keeps talking about infringing items. It never mentions useful articles, because it's not a useful articles case. The tires embodied the infringing element. These were filed under VA Visual Arts for the tread, and that was on the tires. So that case has nothing to do with useful articles. Those tires were embodying the copyrighted material on them, no different than a mouse pad, a shirt, anything that has the copyrightable material. And in the Phoenix case, it's also very different. In the Phoenix case, in each and every instance, they reproduced and distributed the infringing contract. It wasn't that that was done, and then you have this useful article. Every single time that they used the contract, they made a reproduction of the contract. So it is not the same as you have here. You have a reproduction and copyright infringement actually occurring each time the contract was used. When my client sold the benches, there was no additional infringement. And I'm out of time. It's the frustrating thing. There's so many issues here that 15 minutes doesn't allow. But I appreciate the opportunity. It does focus the issues. Thank you, Your Honor. Thank you both. The case is taken under submission. Thank you, Your Honor. All rise.